# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

MARY ELLEN RITCHEY, )
)
        **Plaintiff,** )
)
    v. ) Case No. CIV-14-274-SPS
)
CAROLYN W. COLVIN, )
**Acting Commissioner of the Social** )
**Security Administration,** )
)
        **Defendant.** )

## OPINION AND ORDER

The claimant Mary Ellen Ritchey requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born July 5, 1954, and was fifty-eight years old at the time of the administrative hearing (Tr. 130). She has a high school education and completed one year of college, and has worked as a telephone solicitor, tile sorter, customer service representative, housekeeper/cleaner, executive housekeeper, and poultry farmer (Tr. 70, 187). She alleges that she has been disabled since March 13, 2010, due to problems with her right knee, high blood pressure, diabetes, asthma, diabetic neuropathy, and heart problems (Tr. 186).

**Procedural History**

On December 9, 2010, the claimant filed for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Deborah Rose held an administrative hearing and determined that the claimant was not disabled in a written opinion dated March 12, 2013 (Tr. 13-21). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made her decision at step four of the sequential evaluation. She found that the claimant could perform a limited range of sedentary work as defined in 20 C.F.R. § 404.1567(a), *i. e.,* she could lift/carry/push/pull up to ten pounds, could stand/walk up to two hours in an eight hour workday, and could sit up to six hours in an eight hour

workday, but that she had the additional limitations of occasionally climbing, balancing, stooping, kneeling, crouching and crawling, never climbing ladders/ropes/scaffolds, and no more than occasional exposure to respiratory irritants (Tr. 16). The ALJ then concluded that the claimant was not disabled because she could return to her past relevant work as a customer service representative and telephone solicitor (Tr. 20).

**Review**

The claimant contends that the ALJ erred by failing: (i) to properly assess her credibility, (ii) to properly analyze third party evidence, (iii) to develop the record, (iv) to support her RFC by substantial evidence, and (v) to support her step four findings by substantial evidence. The Court agrees with the claimant's first and fourth contentions and the decision of the Commissioner should therefore be reversed.

The ALJ found that the claimant had the severe impairments of degenerative joint disease of both knees, status post right total knee replacement, coronary artery disease, status post coronary artery bypass grafting, diabetes mellitus, hypertension, and asthma/chronic obstructive pulmonary disease (Tr. 15). The medical evidence relevant to this appeal reflects that the claimant underwent an aortic valve replacement and coronary artery bypass graft on September 13, 2006, with subsequent anti-coagulation therapy (Tr. 381-82, 387-88, 398-99, 413-14, 427-28, , 431-34, 436-38, 452-55, 457-56, 462-66, 469-70, 478-81, 483-85, 493-94, 505-06, 509-11, 587-88, 593-94, 712-13, 802). Since her heart surgery, the claimant's emergent care for chest pains included a June 10, 2009, visit to the Saint Francis Hospital Emergency Department, where her echocardiogram, electrocardiogram and chest x-rays were all normal (Tr. 231-46). The claimant was also

admitted to Hillcrest Medical Center Hospital on November 3, 2009 (Tr. 749-50). She was diagnosed with chest pain, not secondary to cardiac etiology, possibly related to musculoskeletal etiology (Tr. 749). The claimant also presented to WW Hastings Indian Hospital (WWH) Emergency Department on April 12, 2012, and was diagnosed with chest wall pain and bronchitis (Tr. 1040-47). On December 6, 2012, the claimant presented to Tahlequah City Hospital with chest pain and shortness of breath (Tr. 1111-18). Testing performed that day showed no evidence of coronary ischemia or infarct, her valve was functioning well, and her ejection fraction was 51% (Tr. 1109). A CT scan of her chest and echocardiogram showed a stable ascending aorta and Dr. Lubin recommended yearly monitoring (Tr. 1109).

The claimant underwent a total right knee replacement on March 16, 2010, performed by Dr. Terrill Simmons and Dr. Richard Stamile (Tr. 317). After surgery, she engaged in physical therapy from April 1, 2010, through July 12, 2010 (Tr. 250-309). At a June 2010 follow up appointment, Dr. Stamile found the claimant flexed to over one hundred degrees and lacked about two to three degrees of full extension (Tr. 312). He stated he was delighted with how well she was doing and that he concurred with her decision to file for total disability (Tr. 312). At a July 2010 follow up, Dr. Stamile found the claimant lacked one to two degrees of full extension, had a valgus angle of one to two degrees on the right, and noted slight swelling consistent with improving motion (Tr. 311). Treatment notes indicate the claimant walked without a limp and was "as spry as can be" (Tr. 311). Dr. Stamile opined that the claimant was totally disabled and unable to work (Tr. 311).

The record shows the claimant has regularly complained of pain in her legs, knees, and feet, mentioning at times the pain was so severe it was painful to wear shoes (Tr. 375-82, 392-97, 611-16, 623-27, 839-43, 865-71, 1052-61, 1090-97). She was diagnosed with radiculopathy pains on February 15, 2011 (Tr. 614). The claimant initiated infrared physical therapy for her leg and foot pain on March 10, 2011; however, she reported it did not appreciably help her pain a month later (Tr. 615-21). On December 2, 2012, an ultrasound of the claimant's lower extremities showed diffuse plaque formation without evidence of hemodynamically significant stenosis and moderately decreased ankle brachial index on the left (Tr. 917).

As to the claimant's back, x-rays of her lumbosacral spine dated January 19, 2011, show degenerative disc disease and facet arthrosis causing neural foraminal stenosis at L5-S1 (Tr. 607). The claimant reported daily low back pain with bending, lifting, walking, and sitting on April 15, 2011, and initiated physical therapy for back pain that same day (Tr. 628). The records show the claimant participated in physical therapy until June 3, 2011, and the claimant reported her pain was getting "a little bit better" (Tr. 628-35). Her physical therapist's notes on June 3, 2011, indicate the claimant was to continue, but there are no additional physical therapy records after that date (Tr. 635). A bone density test on July 19, 2011, revealed osteopenia in the claimant's back at L-1 through L-4 and in her neck (Tr. 837). Further imaging in the record shows osteoarthritis in the claimant's left thumb and index finger, and a small coronoid process spur in her left elbow (Tr. 877, 892, 894).

Dr. Adel Malati conducted a physical consultative examination on February 23, 2011 (Tr. 561-73). He found full range of motion in the claimant's neck, shoulders, elbows, wrists, hands, ankles, back, and hips, but found her right knee flexion was limited to ninety degrees and her left knee flexion was limited to one hundred thirty degrees (Tr. 564, 569-73). Dr. Malati also found the claimant could not do heel, toe, or heel-to-toe walking; however, he noted she walked in and out of the office without an assistive device; had a slow, steady gait with a slight limp on the right leg; and was able to sit, stand, and lie down without difficulty (Tr. 564). He indicated the claimant had no pain, tenderness, or muscle spasm in her lumbosacral or cervical spine (Tr. 572). His impression was insulin requiring diabetes mellitus, asthma, fibromyalgia, coronary artery disease (status post myocardial infarction and stent), hyperlipidemia, hypertension, status post right total knee [replacement], total hysterectomy, and status post aortic valve replacement (Tr. 564). State reviewing physician Dr. James Metcalf then completed a Physical RFC Assessment on May 23, 2011, and found the claimant capable of performing the full range of sedentary work (Tr. 577-84).

At the administrative hearing, the claimant testified she had an unsuccessful right knee replacement surgery, that she has difficulty fully extending her right knee, and that her left knee was quickly deteriorating (Tr. 44-45). She stated she experiences knee pain "all the time," that she requires a cane to help her get out of a seated position and to stand, and that she has pain and swelling in her legs every day due to poor circulation (Tr. 47-48). She testified that her diabetes is not well controlled and as a result she was tired and lethargic once or twice a week and has blurry vision (Tr. 49-53). She stated she was:

(i) diagnosed with fibromyalgia in 2011 and has pain throughout her body; (ii) that she had an aortic valve replacement and a stent placed in 2006, during which a sternectomy was performed; and that she still experienced pain in her chest from the sternectomy and that she can't lift as a result (Tr. 54-56). She further stated she has back problems that will likely require surgery and has trouble using her hands due to arthritis and rheumatoid arthritis (Tr. 59-60). As to specific limitations, she testified she could walk twenty to thirty yards with a cane, ten to fifteen yards without a cane, stand for thirty minutes to an hour before needing to sit down and rest, use her hands for thirty minutes, and sit for forty-five minutes before needing to stand and walk for five minutes (Tr. 62-64).

In her written opinion, the ALJ summarized the claimant's testimony as well as most of the medical record. She found the claimant not credible due to significant inconsistencies in the record, including finding the claimant had good results of her right knee replacement and subsequent manipulation under anesthesia despite her testimony to the contrary; complaints of disabling pain in her right knee not supported by the evidence; the claimant's reports of using a cane, but being able to ambulate without one; stable coronary artery disease and ascending aorta; and her report of severe rheumatoid arthritis not supported by the evidence (Tr. 19-20). The ALJ summarized without analysis Dr. Malati's consultative examination report (Tr. 19). She gave the state reviewing physicians' opinions substantial weight, finding they were well supported by the overall evidence of record (Tr. 20).

Deference is generally given to an ALJ's credibility determination, unless there is an indication that the ALJ misread the medical evidence taken as a whole. *See Casias*,

933 F.2d at 801. In assessing a claimant's complaints of pain, an ALJ may disregard a claimant's subjective complaints if unsupported by any clinical findings. *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996). The Court finds that the ALJ's evaluation of the claimant's credibility, specifically as it relates to her pain, fell below these standards. This is especially important where, as here, the ALJ found that the claimant had a pain-producing impairment, *i. e.*, degenerative joint disease of both knees, and the record contains objective medical evidence of the presence of additional pain-producing impairments the ALJ failed to even consider.

Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson v. Sullivan*, 987 F.2d 1482, 1490-1491 (10th Cir. 1993), *citing Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989) and *Gossett v. Bowen*, 862 F.2d 802, 807-08 (10th Cir. 1988). In assessing allegations of pain, an ALJ "must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the

evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992), *citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987). Here, the ALJ stated that she had considered the claimant's complaints of pain but provided no analysis as to the claimant's pain, nor did she connect the claimant's RFC with her level of pain. *See, e. g., Harrison v. Shalala*, 28 F.3d 112, at *5 (10th Cir. 1994) (unpublished table opinion) ("If the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry. The [Commissioner] must show that jobs exist in the national economy that the claimant may perform *given the level of pain [he] suffers*.") [citation omitted]. *See also Winfrey v. Chater*, 92 F. 3d 1017, 1025 (10th Cir. 1996) ("When . . . the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review.").

The ALJ compounded her error when she failed to consider objective medical evidence in the record of the presence of additional pain-producing impairments, *i. e.*, degenerative disc disease and stenosis at L5-S1, radiculopathy, fibromyalgia, and osteoarthritis (Tr. 375-82, 392-97, 564, 607, 611-21, 623-35, 837, 839-43, 865-71, 877, 892, 894, 1052-61, 1090-97). While it is true that the ALJ's failure to find these impairments severe at step two is not a reversible error, the fact that she then also ignored them at step four is error. The ALJ is required to consider the combined effect of all of the claimant's medically determinable impairments at step four. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, [s]he has satisfied the analysis for purposes of step two. H[er] failure

to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from h[er] analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those [s]he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. Thus, the ALJ further erred by failing to consider the combined effect of all of her medically determinable impairments in assessing her RFC.

Because the ALJ failed to properly analyze the claimant's credibility and pain and further failed to account for *all* the claimant's impairments in determining her RFC, the decision of the Commissioner should be reversed and the case remanded for further analysis. If this results in adjustments to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 30th day of September, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**